UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

XIN SUN,

               Petitioner,

     v.

JULIO HERNANDEZ et al.,[1]

               Respondents.

CASE NO. 2:26-cv-01013-JNW

ORDER GRANTING HABEAS
CORPUS PETITION

This matter comes before the Court on Petitioner Xin Sun's Petition for a Writ of Habeas Corpus. Dkt. No. 1. The Court GRANTS the petition for the reasons stated below.

## 1. BACKGROUND

Petitioner Xin Sun is a citizen of China detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1. Sun has been in

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Acting Seattle Field Office Director, U.S. Immigration and Customs Enforcement Julio Hernandez for Cammilla Wamsley.

ORDER GRANTING HABEAS CORPUS PETITION - 1

ICE custody since he arrived in the United States on December 22, 2024, and was apprehended by Customs and Border Patrol near Tecate, California. Dkt. No. 11-1.

On September 25, 2025, an Immigration Judge ordered Sun removed to China but granted withholding of removal. Dkt. No. 11-3. Both Sun and the Government waived appeal, and the order became administratively final that day. Dkt. No. 10. ¶ 10.

On January 9, 2026, Enforcement and Removal Operations ("ERO") issued Sun a "Warning for Failure to Depart" and asked him to identify "three to five countries" to which he could be removed by January 19, 2026. Dkt. No. 10. ¶ 11. The Government did not provide the Court with a copy of that warning notice. On January 20, 2026, Sun told ERO that he could not select a country. *Id*. ¶ 12. Sun contends that on January 20, 2026, he was provided a document to sign by an ICE agent but that he could not read or understand the document, so he refused to sign it. Dkt. No. 1 at 7. Sun is a monolingual Mandarin Chinese speaker—it is unclear from the record whether Sun was provided a translator during his communications with the Government.

On February 12, 2026, ICE served Sun a Notice of Removal to Uganda. *Id*. ¶ 15. But about two weeks later, on February 25, ERO "ceased efforts to remove [Sun] to Uganda." *Id*. On February 25, 2026, ERO issued Sun another "Warning for Failure to Depart," which Sun refused to sign. Dkt. No. 11-6. Sun was also issued a "list of countries he could travel to without obtaining a visa." Dkt. No. 10 ¶ 16. The Government did not provide the Court with a copy of that list, but Sun did. Dkt. No. 13 at 8–10. The document is titled "Visa Free Chinese," and it is a three-page list of

ORDER GRANTING HABEAS CORPUS PETITION - 2

country names categorized by continents with the number of days that a Chinese passport holder can temporarily stay in those countries without a visa. Dkt. No. 13 at 8–10. The list ranges from "Fiji (4 months)" to "Brunei (14 days)" and includes "Palestine (Arrival by sea to Gaza Strip not allowed)." Dkt. No. 13 at 8–10. It does not identify any country willing to accept Sun for removal.

ERO holds Sun's Chinese passport, which has an expiration date of January 9, 2033. *Id.* ¶ 18. ERO represents only that it "continues to identify a third country which will accept [Sun]." *Id.* ¶ 19. The Court takes judicial notice that Sun's first habeas petition was denied without prejudice as premature on February 24, 2026, before the six-month *Zadvydas* period had expired. *Sun v. Hermosillo*, No. 2:26-cv-00215-LK, 2026 WL 510666 (W.D. Wash. Feb. 24, 2026). Sun filed this second petition on March 25, 2026—now more than 200 days after his removal order became final.

## 2. DISCUSSION

### 2.1 Legal standard.

Federal courts may grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody,"

ORDER GRANTING HABEAS CORPUS PETITION - 3

and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 2.2    Sun's detention is no longer authorized under *Zadvydas*.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id*. at 701. After that, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. [A]as the period of prior post removal confinement grows, what counts as the 'reasonably

ORDER GRANTING HABEAS CORPUS PETITION - 4

foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

It is undisputed that Sun is detained under 8 U.S.C. § 1231(a)(6); that more than six months have elapsed since his removal order became final; and that he cannot be removed to China because withholding has been granted. Dkt. No. 11-3. On this record, the Government concedes that removal to China is not reasonably foreseeable, but it contends that Sun's detention is constitutional because he was "uncooperative" in effectuating his third country removal. Dkt. No. 9.

The Ninth Circuit has held that a noncitizen who "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government" cannot meet their burden under *Zadvydas* to show that removal is not reasonably foreseeable. *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003)*; see also, Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003); *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008). In application, courts have found that detainees cannot meet their *Zadvydas* burden when they engage in affirmative obstruction. For example, in *Pelich*, the petitioner gave false information about his nationality and refused to complete a passport application. *Pelich*, 329 F.3d at 1059. In *Lema*, the petitioner misrepresented his country of citizenship. *Lema v. I.N.S.,* 341 F.3d 853, 857 (9th Cir. 2003)

The Government's evidence of noncooperation does not carry its burden, for at least three reasons.

First, ERO already holds Sun's Chinese passport, valid until 2033. Dkt. No. 10 ¶ 18. Whatever cooperation the Government seeks, it does not include obtaining

a travel document from China. Second, the Return's key evidentiary citation is unreliable. The Government asserts that "[s]ince the denial of Petitioner's first habeas petition, Petitioner again informed ERO that he would not select a country for removal," citing "Reed Decl. ¶ 15." Dkt. No. 9 at 6. No Reed Declaration appears on the docket. The Rosa Declaration—the only deportation officer's declaration on file—says something different at paragraph 15: that ERO ceased efforts to remove Sun to Uganda. Dkt. No. 10 ¶ 15. Other paragraphs of the Rosa Declaration do address Sun's responses, but the most pointed statements are conclusory. *Compare id.* ¶ 19 ("Petitioner continues to refuse to identify a country of removal"), *with id.* ¶ 12 (on January 20, 2026, Sun "replied that he cannot choose a country of removal"), and *id.* ¶ 16 (on February 25, 2026, Sun "informed ERO that he would not select a country for removal"). The distinction between "cannot" and "will not" matters; the Court declines to recharacterize the former as the latter on the Government's say-so.

Third, the documentary record does not support the Government's narrative. The January 9, 2026, Form I-229(a) on which the Government relies has not been filed. The February 25, 2026, Form I-229(a) is in the record and shows that Sun refused to sign. Dkt. No. 11-6 at 2. The form does not indicate whether a translator was provided to a monolingual Mandarin speaker. Sun's contemporaneous account of the February 25 encounter, translated and certified, Dkt. No. 13 at 15–16, does not describe refusal; it describes a request to consult counsel before signing anything ICE put in front of him. Wanting to speak with one's lawyer is not noncooperation. Even crediting the Government's account, Sun's failure to identify a

country from a list of countries that do not require Chinese nationals to have visas to enter, does not amount to an affirmative misrepresentation or refusal to complete travel arrangements. *Kara v. Bondi*, No. 2:26-CV-00105-JHC, 2026 WL 322772, at * 4 (W.D. Wash. Feb. 6, 2026) (finding insufficient evidence of noncooperation where the government's sole evidence is its assertion that petitioner did not identify a third country); *Zheng v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:25-CV-02483-TLF, 2026 WL 850531, at * 4 (W.D. Wash. Mar. 27, 2026) (list of "visa-free" countries for Chinese nationals without any indication of a potential third country as a candidate for removal is too generalized of an assertion for the court to rely on); *Ghasedi v. Wamsley*, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025) (government's bare assertion that the petitioner "was 'determined as not being cooperative in obtaining a travel document' " insufficient evidence to deny habeas petition); *Abramian v. Bondi*, 2026 WL 166907, at *6 (C.D. Cal. Jan. 16, 2026) (rejecting noncooperation argument where petitioner was never informed of the country of their removal).

Even setting aside the Government's noncooperation argument, nothing in the record indicates that ICE has made additional efforts to identify a third country for removal. Its only effort to identify a specific destination collapsed, and it abandoned that effort thirteen days later without explanation. More than two months have passed since that abandonment, and the Government offers only that "ERO continues to identify a third country which will accept Petitioner." Dkt. No. 10 ¶ 19. That is not enough—there is no evidence that any country has accepted Sun, and no evidence of a timeline for removal. These deficiencies are particularly

concerning given that Sun has cumulatively served more than a year in ICE detention, six months of which followed his final order of removal.

The Government's reliance on *Diouf* is misplaced. *Diouf* does not hold that a petitioner must show that a country affirmatively refused acceptance to trigger *Zadvydas* review. 542 F.3d at 1223. The relevant question is whether removal is reasonably foreseeable. On this record, it is not.

Because there is no significant likelihood of removal in the reasonably foreseeable future, Sun's continued detention is no longer authorized by statute and violates due process. He must be released.

**2.3    Claims the Court declines to reach.**

Sun also asserts that his detention violates the Immigration and Nationality Act, 8 U.S.C. § 236(c), Dkt. No. 1 at 19, and that ICE's departure from its own policies was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Because the *Zadvydas* analysis is dispositive, the Court need not reach these claims.

## 3.   CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for a Writ of Habeas Corpus is GRANTED, Dkt. No. 1.

2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to appropriate conditions of release. *See Zadvydas,* 533 U.S. at 696 (citing 8 U.S.C. § 1231(a)(3); 8 U.S.C. § 1253; 8 C.F.R. § 241.5 ("Conditions of release after removal period")).

3. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. See Daley v. Ceja, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 1st day of May, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING HABEAS CORPUS PETITION - 9